JEFFERSON CITY BRIDGE & TRANSIT COMPANY, Appellant, v. A. E. BLASER, Collector of the Revenue.—300 S. W. 778.

Division One, December 7, 1927.

*Irwin & Bushman* and *Julius Meyerhardt* for appellant.

*D. W. Peters* for respondent.

376

ATWOOD, J.—This is an appeal from the order and judgment of the circuit court in sustaining a demurrer and dismissing a bill in equity by the Jefferson City Bridge & Transit Company against A. E. Blaser, Collector of Revenue within and for Cole County, Missouri. The main purpose of this suit is to restrain respondent from collecting certain taxes alleged to have been illegally and fraudulently imposed upon appellant's property in Cole County by the State Tax Commission and the Board of Equalization of the State of Missouri. Our own jurisdiction is invoked by reason of certain constitutional questions raised and preserved by appellant, but before entertaining this appeal we should be satisfied that the cause is well within the purview of equity jurisdiction.

Plaintiff prayed for "an order of this court perpetually enjoining and restraining the defendant from collecting, or attempting to collect, said taxes levied and assessed against the property of the plaintiff by the said State Tax Commission and as equalized and fixed by the State Board of Equalization for the year of 1922, or any part of said year; that the increase in the valuation of plaintiff's property for the year of 1921 made by the said State Tax Commission and approved by the State Board of Equalization be declared null and void and the taxes alleged to be due based upon said increase be cancelled, set aside and for naught held; and that the said A. E. Blaser, Collector of Revenue for and within Cole County, Missouri, be ordered to accept said sum of $1596.36 paid into court in full for all taxes due or owing from the plaintiff to the State of Missouri for the year 1922, and that he be enjoined and restrained in making application for, or proceeding to obtain, judgment against the property of plaintiff, or any part thereof, and from selling the same, and from asking that a special *fieri facias* be issued against said property; and that a temporary restraining order or injunction may issue pending the hearing of this cause, and that said writ of injunction may be made perpetual upon final hearing hereof;" and concluded with the usual prayer for

general relief. It is apparent that the prayer "that the increase in the valuation of plaintiff's property for the year of 1921 made by the said State Tax Commission and approved by the State Board of Equalization be declared null and void," is only incidental to the principal relief sought, namely, injunction against any enforcement of the tax levied thereon.

A general rule, based upon consideration of public policy and the necessary finality of judicial decisions, is that where the court has jurisdiction of the parties and the subject-matter in the particular case, its judgment, unless reversed or annulled in some proper proceeding, is not open to collateral attack or impeachment, by parties or privies, in any collateral action or proceeding whatever. [1 Black on Judgments (2 Ed.) sec. 245.] A state board of equalization acts judicially in determining what property is to be assessed for taxation, and in fixing the amount of the assessment, its action comes within the rule. [Same authority, sec. 250; 3 Cooley on Taxation (4 Ed.) sec. 1199; 37 Cyc. 1108; 34 C. J. 519; State ex rel. v. Vaile, 122 Mo. l. c. 47.] The word "collateral" as here used is the antithesis of "direct," and is therefore broad enough to embrace any independent proceeding. A direct attack is one the sole object of which is to deny and disprove the apparent validity of the judgment, while one that has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, is a collateral attack upon the judgment and falls within the rule. Despite the apparent clarity of this distinction courts have not always spoken with consistency in applying the rule. For instance, in State ex rel. Van Hafften v. Ellison, 285 Mo. l. c. 314, in an equitable proceeding to cancel special tax bills we said:

"A collateral attack is an attempt to impeach a judgment, whether interlocutory or final, in a proceeding not instituted for the express purpose of annulling the judgment. [Lieber v. Lieber, 239 Mo. 55, 17 Am. & Eng. Encyc. Law (2 Ed.) p. 848.] The impeaching of the injunction orders may be necessary in order for the plaintiff to obtain the relief he asks, but nevertheless, the present attack on them is collateral, and not direct. [23 Cyc. pp. 1062, 1063, and cases cited in note 67.]"

Also, in 1 Black on Judgments (2 Ed.), sec. 253, it is said:

"A bill in equity seeking to enjoin the enforcement of a judgment at law, by execution or otherwise, constitutes a collateral attack upon the judgment, and cannot be maintained on account of any mere errors or irregularities, but only upon a showing that the judgment is void. There are cases, however, holding that a suit to enjoin the enforcement of a judgment on the ground of a total want of jurisdiction over the person of the defendant—as, where no process was ever served on him—is a direct attack on the judgment, and not collateral."

Also, in 15 Ruling Case Law, 730, sec. 182, it is said:

"An equitable action in reference to a judgment, even when such judgment is one obtained in a court of another jurisdiction, is considered an independent original suit, and a bill in equity for relief against a judgment is generally deemed a direct method of attacking it, and in this respect resembles a petition for a new trial or a writ of error *coram nobis*. It has been said, however, by some courts, that a suit in equity to enjoin a judgment at law may be regarded as a collateral attack, subject to the limitation that the rules applicable to collateral attacks are not in all respects applicable to it. For example, in an ordinary collateral attack, it is not permissible to contradict judicial recitals or to disprove official returns of the service of process, but in equity such recitals may be contradicted and such returns may be proved to be false."

Also, 15 Ruling Case Law, 839, sec. 312: "A direct attack on a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of the same in a proceeding instituted for that purpose."

In Vanfleet on Collateral Attack, sec. 3, it is said: "Any proceeding provided by law for the purpose of avoiding or correcting a judgment, is a direct attack which will be successful upon showing the error; while an attempt to do the same thing in any other proceeding is a collateral attack which will be successful only upon showing a want of power."

In Section 2 of the same work the author also states that "bills in equity or complaints and petitions under the codes to set aside, vacate, modify or correct judgments for fraud, accident, mistake or excusable neglect, are some of the modes provided by law for avoiding or correcting judgments, and are direct attacks." Citing and quoting from Harmon v. Moore, 112 Ind. 227, the same author also says: "'Whatever the form of the proceeding may be by which a party to a judgment is seeking to review it, or to obtain relief therefrom, if the proceeding is one for which provision is made by statute, and the statutory method is being pursued,' that is a direct attack."

In Morrill v. Morrill, 20 Ore. 96, a collateral attack is thus defined:

"An attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying the decree or enjoining its execution." Commenting on this definition, Mr. Vanfleet, in Section 3 of his above work, says: "This definition assumes that a proceeding to annul or enjoin is always direct. It is direct only when pursued in the time and manner provided by law and against one who is not a bona-fide purchaser. As all judicial records must be tried by inspection, an attempt to overturn or overhaul them by evidence *dehors* in a proceeding not provided by law, is a collateral attack."

Turning to Article VII, entitled Injunction, of Chapter 13, Revised Statutes 1919, we find that injunction as a writ of grace and discretion may issue to stay or restrain the execution of a judgment to the extent "the plaintiff shall show himself equitably entitled to be relieved against." [Sec. 1955, R. S. 1919.] Remedy by writ of injunction exists "in all cases where a cloud would be put on the title of real estate being sold under an execution against a person, partnership or corporation having no interest in such real estate subject to execution at the time of sale, or an irreparable injury to real or personal property is threatened, and to prevent the doing of any legal wrong whatever, whenever in the opinion of the court an adequate remedy cannot be afforded by an action for damages." [Sec. 1969, R. S. 1919.]

It thus appears that our statutory law has provided that in a proper case the enforcement of a judgment can be restrained by bill in equity, and whenever such a proceeding necessarily tends to impeach the judgment the enforcement of which is sought to be restrained, although it may not in terms seek to set aside, cancel or annul the judgment, the proceeding should be construed as a direct attack. Otherwise, the arm of equity, though accorded statutory recognition and support, would be shortened by application of the principle announced in State ex rel. Johnson v. Bank, 279 Mo. 1. c. 238, that a void judgment may be attacked collaterally, but one that is merely voidable can only be attacked by a direct proceeding, for the need of equity intervention is greatest when the invalidity of the judgment is grounded in matters *dehors* the record. We conceive this to be in line with the reasoning suggested in Boonville National Bank v. Schlotzhauer, County Collector, 317 Mo. 1298 (a decision by Court en Banc), where the proceeding was held to be a direct attack on the assessment judgment, although the only relief sought was by injunction. However, independently of the statute, the propriety of seeking relief by such proceeding is well grounded in precedent. [Cummings v. National Bank, 101 U. S. 1. c. 157.] Although the view is entertained in some jurisdictions and expressed in 15 Ruling Case Law, sec. 350, that "it is not within the power of a court of equity to annul, vacate or modify a judgment at law," and that a proceeding to obtain relief from a judgment is a collateral attack on the judgment, it is nevertheless an outstanding juridical fact that a court of equity will in such a proceeding inquire whether there are any equitable circumstances requiring it to prevent the person in whose favor the judgment was recovered from enforcing or taking advantage of it.

A leading decision upon the subject of equitable relief against judgments at law is one by Chief Justice MARSHALL in Marine Ins.

Co. v. Hodgson, 7 Cranch, 332, 3 L. Ed. 362, where the grounds for the interference of equity are specified in the following terms:

"Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

The propriety of equity intervention for relief against assessment judgments in proper cases is most apparent in jurisdictions where no appeal is allowed from the finding and judgment of the board of equalization, or where as in this State review by a court of record is limited to writ of *certiorari* which precludes any consideration of matters *dehors* the record, even though such would disclose such well-recognized grounds of invalidity as want of jurisdiction or fraud in the very concoction of the judgment. A suit in equity to enjoin the enforcement of an assessment judgment alleged to be void for want of jurisdiction or for fraud exercised in its making, whether such proceeding be called a collateral or a direct attack upon the judgment, has been held to be a proper remedy in Taylor v. L. and N. Railroad Co., 88 Fed. 1. c. 374, where the proceeding was termed a collateral attack; Cummings v. National Bank, 101 U. S. 153; National Bank v. Kimball, 103 U. S. 732; Stanley v. Supervisors, 121 U. S. 535; Greene v. Louisville & Interurban Railroad Co., 244 U. S. 499; Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350; and Sioux City Bridge v. Dakota County, 260 U. S. 441. We have recognized and adopted the ruling announced in the foregoing cases in State ex rel. v. Western Union Tel. Co., 165 Mo. 502; Boonville National Bank v. Schlotzhauer, supra; and other cases. So, the relief here sought is properly within the range of equity jurisdiction, and we shall proceed to determine whether or not the bill, in view of the limitations set up to protect the integrity of assessment judgments, states a cause of action.

The bill alleges, first, that plaintiff is an Illinois corporation owning and operating a line of electric railroad extending through the City of Jefferson, Cole County, Missouri, across the Missouri River over a bridge owned and operated by plaintiff and extending into the County of Callaway; second, that defendant A. E. Blaser is the duly elected, qualified and acting Collector of Revenue within and for Cole County, Missouri; third, that the Missouri River over which said bridge is located is a navigable stream and as such is under the exclusive control of the Government of the United States;

that one-half of said bridge is located in Cole County, Missouri, and that plaintiff owns and operates 4.649 miles of electric railroad extending from the southerly terminus of said bridge to West Main Street and thence easterly and westerly to the city limits of Jefferson City; fourth, that by virtue of Subdivision 6 of Section 12847, Revised Statutes 1919, the State Tax Commission was vested with exclusive power to make original assessment of railroads, railway cars, rolling stock, street railroads and bridges throughout the State of Missouri; fifth, that said Tax Commission acting under and by virtue of such power proceeded to assess as of June 1, 1920, the electric railroad property of plaintiff, exclusive of the bridge across the Missouri River, at $79,229.99, and assessed that part of plaintiff's property situated in Cole County, Missouri, at a value of $56,054.68, which tax was thereafter during the year 1921 adjusted and equalized by the State Board of Equalization and fixed at said sum of $56,054.68; that in truth and in fact said sum was then and is now the true value of said property in money as representing that portion of plaintiff's property, exclusive of said railroad bridge, taxable in Cole County, Missouri; sixth, that through the exercise of the power vested in it, the State Tax Commission, as of June 1, 1920, determined and fixed the value of the bridge spanning the Missouri River and belonging to plaintiff at the sum of $134,750, and thereafter during the year 1921 the State Board of Equalization equalized and determined the fair value of said bridge at the sum of $134,750, and fixed and determined the value of the portion of plaintiff's bridge located in Cole County, Missouri, at the sum of $67,375; that the value fixed on said bridge property was the actual value thereof at the time of said assessment and equalization, but by reason of natural decay, wear, tear and depreciation, said property has decreased in value and is not now of the value fixed by said State Tax Commission and as equalized by said State Board of Equalization, and was not the value as of June 1, 1921, nor as adjusted and equalized by the State Board of Equalization·during the year 1922; seventh, that the State Tax Commission during the year 1921 fixed and determined the value of all of plaintiff's electric railroad property as of June 1, 1921, at $108,370, and during the year 1922 the State Board of Equalization fixed and adjusted the value of plaintiff's said property at said sum of $108,370; eighth, that the State Tax Commission assessed the bridge over the Missouri River belonging to plaintiff as of June 1, 1921, at the sum of $195,-402, and thereafter during the year 1922 said State Board of Equalization fixed and determined the value of said bridge at said sum of $195,402, and fixed the equalized value of that portion of said bridge located in Cole County, Missouri, at $97,701; ninth, that the fair and true money value and cash price of said property at the time

of said assessment of plaintiff's bridge property located in Cole County, Missouri, was not $97,701, but in truth and in fact was $67,375, and that the assessment so made by the State Tax Commission and equalized by the State Board of Equalization for the year 1921, upon which taxes were to be levied and paid before December 31, 1922, was $30,326 in excess of the cash price of such property; tenth, that the value placed upon plaintiff's electric railroad for that part of its property located in Cole County, Missouri, was erroneous, illegal and wrongfully assessed at $76,670, whereas the actual money value and cash price of said property would not exceed the sum of $56,054.68, and that the value was wrongfully and illegally fixed and equalized at $20,615.32 in excess of its true money value. The eleventh subdivision of the bill we copy in full, as follows:

"Plaintiff further states that the State Tax Commission was and is required by law to assess all property subject to taxation only in proportion to its value, and to make assessments for the purposes of taxation uniform upon the same class of subjects, and all other property subject to taxation within the State, and the said State Board of Equalization is required by law to equalize the valuation and assessment of real and personal property; that in assessing plaintiff's property said State Tax Commission wholly failed, neglected and refused to levy an assessment in proportion to the value of its said property, or to assess said property in uniformity with the same class of subjects or property, and the said State Board of Equalization, on reviewing such assessment, failed, neglected and refused to adjust and equalize the same; but that both said State Tax Commission and said Board of Equalization illegally, unlawfully and fraudulently discriminated against plaintiff in imposing a higher assessment and a greater increase over and above the valuation as fixed and determined by the State Tax Commission, and in review by the State Board of Equalization, for the year of 1921, than it fixed or imposed upon other companies, corporations or persons owning and operating electric railroads and bridges crossing navigable streams and other taxable property subject to taxation, located in whole or in part within the State of Missouri; and plaintiff states that said assessment so made as aforesaid is not uniform upon the same class of subjects, and all other property subject to taxation, and is contrary to the laws and Constitution of the United States; that on account of the said Tax Commission and said State Board of Equalization, on review, fixing the valuation and assessment of plaintiff's property for the year of 1921 upon a different and higher basis than that imposed in fixing the valuation of an assessment upon other bridges and electric railroads of the same class and character of plaintiff's bridge, and upon all other property within the State subject to taxation, plaintiff has been denied the equal protection of

the law, contrary to the provisions of Section 1, Article XIV, Amendments of the Constitution of the United States of America; that on account of said State Tax Commission and said State Board of Equalization, on review, fixing the assessment and valuation of plaintiff's property in the year of 1921 far in excess of the fair cash value of said property, the property of plaintiff would be taken without due process of law contrary to the provisions of Section 1, Article XIV, Amendments to the Constitution of the United States of America, and Section 30 of Article II of the Constitution of Missouri; that the said action of the said State Tax Commission and of the said State Board of Equalization in fixing the value of said bridge spanning the Missouri River, and especially that portion of the said property located in Callaway County, Missouri, at a value in excess of its cash value or its value in money at the time of such assessment, it thereby failed, neglected and refused to assess and equalize said property in the same manner and in the same way as the same and other class of subjects were assessed within the territorial limits of the State of Missouri, contrary to the provisions of Section 3 of Article X of the Constitution of the State of Missouri; and plaintiff further says that the said action of the said State Tax Commission and of the said State Board of Equalization in assessing that portion of plaintiff's bridge located in Cole County, Missouri, at $97,701, in excess of its actual value in cash, and in its action in fixing the value of plaintiff's electric railroad located in said county at $20,615.32 in excess of its actual cash value, when other classes of property of like kind subject to taxation were assessed at and for less than its cash value, would cause the plaintiff to pay taxes not in proportion to the value of its said property, in violation of Section 4, Article X, of the Constitution of the State of Missouri.''

The twelfth subdivision of the bill alleges that plaintiff made proper return to and appeared before said State Tax Commission and State Board of Equalization prior to said assessment and made a full and fair disclosure as to its said property and that said valuations were fixed with full information, knowledge and understanding that said assessment on said property was in excess of the value thereof; that in fixing and determining said values for the year 1921 said State Tax Commission and said State Board of Equalization ''fixed said valuation arbitrarily and without reference to the fair cash value of said property in Missouri, and without reference to the assessed valuation of other property of the same class and kind; but illegally, unlawfully and fraudulently made said assessment in excess of its cash value;'' that said valuations were fixed and determined without any evidence proving or tending to prove that plaintiff's property had any such alleged or purported value; that said property was arbitrarily and wrongfully assessed without due re-

gard to the real value thereof; and "that said sums assessed against said property and the value thereof were grossly excessive and that it amounts to and is in law a fraudulent assessment of plaintiff's property, and if allowed to stand will amount to the taking of plaintiff's property without due process of law." The thirteenth subdivision of the bill alleges timely tender of payment of $1596.36, the full amount of taxes due on all of plaintiff's property in Cole County based upon an assessment in the total sum of $123,429.68 fixed and equalized by said Tax Commission and Board of Equalization in 1920, instead of $2859.69 demanded by defendant. The fourteenth and final subdivision of the bill alleges that valuation of plaintiff's property so fixed, equalized and approved at $174,371 as and for the year 1921 has been extended against its property; that defendant is demanding payment of said sum of $2859.69, and is threatening to and will bring suit for the same, and is threatening to levy upon, seize and sell plaintiff's property, and he will do so unless restrained therefrom; that plaintiff will thereby suffer irreparable loss and damage, and plaintiff is without an adequate remedy at law.

The first ten subdivisions of plaintiff's bill contain no allegation of discrimination or fraud in the assessment of its property. The sole complaint appears to be that the assessed value was fixed at more than its cash value. Whether or not all other taxable property in the State was assessed at its cash value or less does not here appear. If the bill contained nothing more than the bare charge that plaintiff's property was assessed at more than its cash value it would be clearly demurrable, because a charge of mere overvaluation does not ordinarily state a case of fraud or even of discrimination. In order to allege discrimination there must be the further charge that other property in the same class was undervalued. [3 Cooley on Taxation (4 Ed.) sec. 1201.] The Missouri Constitution puts all taxable property in a single class for the purpose of taxation (State ex rel. Tompkins v. Shipman, 290 Mo. 65), and hence, if this bill states a cause of action in fraud it must in effect further charge an undervaluation in the average assessment of all other taxable property in this State, and that the assessment of plaintiff's property was fraudulent in its concoction. [State ex rel. v. Vaile, 122 Mo. l. c. 47; State ex rel. Johnson v. Bank, 279 Mo. l. c. 238; Bates v. Hamilton, 144 Mo. l. c. 11; Moody v. Peyton, 135 Mo. l. c. 489.]

A critical examination of the eleventh subdivision above set out in full discloses that while the gravamen there pleaded is still that plaintiff's property was assessed at more than its actual value, yet the assessment is charged to have been made in a manner illegal and fraudulent as to plaintiff in the following particulars: that "said

State Tax Commission wholly failed, neglected and refused to levy an assessment in proportion to the value of its said property, or to assess said property in uniformity with the same class of subjects or property;" that "the said State Board of Equalization, on reviewing such assessment, failed, neglected and refused to adjust and equalize the same;" and that "both said State Tax Commission and said Board of Equalization illegally, unlawfully and fraudulently discriminated against plaintiff in imposing a higher assessment and a greater increase over and above the valuation as fixed and determined by the State Tax Commission, and in review by the State Board of Equalization, for the year of 1921, than it fixed or imposed upon other companies, corporations or persons owning and operating electric railroads and bridges crossing navigable streams and other taxable property subject to taxation, located in whole or part within the State of Missouri." The twelfth subdivision of the bill further alleges that plaintiff made proper return to and appeared before said State Tax Commission and said State Board of Equalization prior to said assessment and made a full and fair disclosure as to its said property and that said valuations were fixed with full information, knowledge and understanding that said assessment on said property was in excess of the value thereof; that in fixing and determining said values for the year 1921 said State Tax Commission and said State Board of Equalization "fixed said valuation arbitrarily and without reference to the fair cash value of said property in Missouri, and without reference to the assessed valuation of other property of the same class and kind;" and "illegally, unlawfully and fraudulently made said assessment in excess of its cash value;" that said valuations were fixed and determined without any evidence proving or tending to prove that plaintiff's property had any such alleged or purported value; that said property was arbitrarily and wrongfully assessed without due regard to the real value thereof; and that "said sums assessed against said property and the value thereof were grossly excessive and that it amounts to and is in law a fraudulent assessment of plaintiff's property."

Looking to the above summarization of the facts pleaded in plaintiff's bill and taken as confessed by defendant's demurrer, it is at once apparent that this is not a case where acts were done by persons charged with making the assessment in pursuance of a rule or plan which resulted in unlawful discrimination against the property of a large class of individuals or corporations. This proceeding is in behalf of only one individual, its property alone is alleged to have been discriminated against and that not systematically or habitually or in pursuance of any rule or plan adopted and systematically followed by those charged with making the assessment, and hence fraud is not to be inferred on that account. If plaintiff seeks

recovery on that theory it has clearly failed to bring this case within the rule announced in such cases. [State ex rel. v. Western Union Tel. Co., 165 Mo. l. c. 516.]

However, the bill does allege that the State Tax Commission refused to levy an assessment in proportion to the value of plaintiff's property, or to assess its property in uniformity with the same class of subjects or property; that the State Board of Equalization on reviewing such assessment refused to adjust and equalize the same: that both the State Tax Commission and the State Board of Equalization "illegally, wrongfully and fraudulently" discriminated against plaintiff in imposing a higher assessment against plaintiff's property than was imposed against other taxable property within the State of Missouri; and that the assessed valuation of its property was arbitrarily fixed without reference to the assessed valuation of other property of the same class and kind. In ruling defendant's demurrer we must take the allegations of plaintiff's bill as true. If the persons charged with making this assessment refused to assess plaintiff's property in proportion to its value and in uniformity with all other taxable property in the State they are presumed to have known that such assessment would be in violation of Sections 4 and 3, respectively, of Article X of the Constitution of Missouri, and would result in unlawful discrimination against plaintiff's property. Their action in so refusing entered into the very concoction of the assessment. Their knowledge that an unlawful discrimination against plaintiff would necessarily follow made such action intentional on their part, and therefore fraudulent as to plaintiff. The bill meets the requirement that the fraud must be clearly stated and the constitutive facts set up. [2 Black on Judgments (2 Ed.) 583; Nichols v. Stevens, 123 Mo. l. c. 117.] In such case we do not think a complainant should be denied relief simply because the discrimination, though alleged to be fraudulent, was not systematic, habitual and against a large class of individuals or corporations. We hold that plaintiff's bill stated a cause of action.

In so ruling this case it is perhaps not amiss to say that chancery courts must not be made the resort of all who may be discriminated against in the assessment of their property. In administering revenue laws it is impossible to obtain absolute equality and uniformity in the distribution of taxes. Sporadic cases of discrimination not occasioned by fraud are bound to occur, and as Circuit Judge TAFT said in Taylor v. L. & N. Ry. Co., 88 Fed. at page 374: "If equitable interference in such cases could be invoked, the obstruction to the collection of taxes would be so frequent as to be intolerable."

The order and judgment of the trial court sustaining defendant's demurrer and dismissing plaintiff's petition is reversed, and the cause is remanded. All concur.