JACOB WEIL ET AL., RESPONDENTS, v. FRED A. RICHARDSON, SHERIFF ET AL., APPELLANTS.

Kansas City Court of Appeals.   January 6, 1930.

*Ringolsky, Friedman, Boatwright & Jacobs* for respondents.

*Frank G. Warren* and *John C. Nipp* for appellants.

BOYER, C.—This is an action under section 1969, Revised Statutes 1919, for injunctive relief against a pending execution sale of real estate. Judgment for plaintiffs and defendants appeal. When the case was originally heard here it was the opinion of the court that title was involved, in view of the *issues* made by the pleadings and the judgment called for upon the entire case. It was certified to the Supreme Court where in Division No. 2 it was held by the majority, accompanied by a dissenting opinion (Weil v. Richardson, 7 S. W. (2d) 384), that the *judgment* rendered did not in itself affect title to real estate, and unless title was so affected the proper appellate jurisdiction was in the Court of Appeals. The dissent was based upon the same view held by this court, that is, if the *issues* made by the pleadings were fully determined by a responsive judgment, title would be involved. The case was remanded to this court where an opinion was adopted in which the decree was reversed and the

cause remanded; but upon motion a rehearing was granted and the case comes to the writer upon reassignment.

Plaintiffs in the suit, Weil and Strauss, who are the respondents here, filed their petition in the Circuit Court of Jackson County, seeking to restrain and permanently enjoin the sheriff of said county and his co-defendant, McIlrath, from selling on execution a parcel of real estate in Jackson county to satisfy a judgment in favor of McIlrath and against Mendelsohn Strauss Realty Company, a corporation. The amended petition, upon which the case was tried, alleges that defendant Richardson is the sheriff of Jackson county; that defendant McIlrath obtained a judgment against the corporation in the circuit court of Jackson county; that plaintiffs are the owners of the real estate in question, and each the owner of an undivided one-half interest therein; that prior to April 19, 1921, the title to the real estate was vested in the corporation, and on said date by warranty deed for a valuable consideration all of said property was conveyed to plaintiff Weil and one Kupfer and the deed duly recorded; that plaintiff Strauss became vested with the interest conveyed by said deed to Kupfer, by deed from Kupfer, duly recorded; that since said time plaintiffs have been in open, notorious and continuous possession of the property; that the sheriff has caused notice of sale to be published by virtue of a general execution issued in favor of defendant McIlrath and against the corporation; that the sheriff has levied on all right, title and interest of said corporation, and in pursuance thereof a sale was to be held February 8, 1923; that the corporation has no right, title, interest or estate in the property; that the judgment, upon which the execution was issued, was had November 17, 1922, subsequent to the date upon which the corporation divested itself of title; that the Mendelsohn-Strauss Realty Company was a corporation duly organized and existing by virtue of the laws of Missouri, and that on December 2, 1913, the charter of said corporation was duly and legally declared forfeited and was forfeited by the State of Missouri, since which said time the said corporation has ceased to exist; that prior to the judgment in favor of McIlrath the corporation had ceased to exist and the judgment is a nullity, and the execution issued thereunder and all other proceedings subsequent to the judgment were void; "that the threatened sale is made only for the purpose of casting and creating a cloud upon the right, title, interest and estate of these plaintiffs in and to the said real estate; that they are not parties in the suit instituted by the said defendant, George D. McIlrath, in which judgment was had, and that no liability of any kind or character had accrued to them by virtue of the allegations upon which the said suit is based, and said contemplated sale is in violation of section 1969, Revised Statutes 1919;" that unless restrained, the sheriff and McIlrath

will sell the property, and that irreparable damage will be done to the interest and title of the plaintiffs, and that same will cast a cloud upon their title, and that they have no complete and adequate remedy at law. The prayer was that the defendants be restrained and enjoined until a hearing, and for a permanent and perpetual injunction restraining them or anyone acting under and thru them from selling the real estate or any interest therein under the judgment in favor of McIlrath, "and that the said judgment heretofore rendered in favor of defendant, George D. McIlrath, be declared a nullity and void, and that the same be set aside and for naught held."

The amended petition was filed May 1, 1923, but prior thereto plaintiffs had filed their original petition February 8, 1923, the day upon which the sale was set, which said petition was in effect the same as the amended petition except the allegations in reference to the forfeiture of the charter of the corporation and the invalidity of the McIlrath judgment. A temporary restraining order was issued at that time returnable February 23, 1923, at which times the application for a temporary injunction was heard and an order made by which defendants were temporarily enjoined and restrained from doing any act or thing under said execution.

April 3, 1923, the defendants filed their separate answers. That of the sheriff is a plea of justification in pursuance to a general execution, and the direction of his co-defendant to make the levy and advertisement. The answer of defendant McIlrath admits that he obtained a judgment against the corporation November 17, 1923, and that same is wholly unsatisfied; that prior to April 19, 1921, title to the real estate was vested in the corporation; admits the purported deeds from the corporation to Weil and Kupfer, and from Kupfer to Strauss were recorded; that Richardson, the sheriff, caused notice of sale to be published by virtue of the execution in favor of McIlrath and against the corporation; that the sheriff had levied on the right, title and interest of the corporation in said property and that the sale was set for February 8, 1923. The answer further contained a general denial, and further stated that prior to April 19, 1921, the corporation was indebted to him upon a cause of action sued on and tried November 17, 1922, which resulted in a judgment in his favor; that it is the same judgment upon which execution was issued; denies that the deed purporting to convey the real estate from the corporation to Weil and Kupfer was a valid conveyance, and states that said deed was without sufficient or valuable consideration to the corporation, and was made for the purpose of hindering, delaying and defrauding him and to prevent him from collecting his debt; that the purported deed was not in fact the deed of the corporation, and was not executed by any authority of the board of directors of said corporation; that the corporation was organized for

the purpose of owning, operating and developing the real estate referred to; that said property was all of the property which the corporation at any time owned and that on said 19th day of April, 1921, said corporation had no property or assets of any kind except said real estate; that on said date the plaintiffs, Weil and Strauss, were owners of all of the capital stock of said corporation except one share held by Kupfer; that the purported deed of April 19, 1921, was secured and placed of record for the express purpose of depriving defendant of any means of collecting his deft; that Kupfer acted as agent for the plaintiffs in pursuance of said fraudulent design in the execution of the purported conveyance from the corporation to Weil and Kupfer and from Kupfer to Strauss; that the conveyance from Kupfer to Strauss was without any consideration; that the corporation now is and at all times mentioned was the true and legal owner of the real estate, and that if defendant is deprived of his right to levy upon said property and sell same, he will be deprived of all means of securing satisfaction of his judgment. He prayed for a dissolution of the temporary injunction, and that the purported deeds be declared to be fraudulent and void as against him and that the property be declared to be the property of the corporation; that defendant be permitted to sell same to satisfy the execution and for general relief.

On May 1, 1923, the plaintiffs filed their amended petition heretofore referred to, and for the first time alleged the non-existence of the corporation prior to the date of the judgment and the invalidity of the judgment. The petitions were sworn to by plaintiff Strauss, and on the same day plaintiffs filed replies to the separate anwers, and to each of said answers replied that they denied all new matter therein, and further stated that the Mendelsohn-Strauss Realty Company was duly organized and existed under charter issued to it and that on December 2, 1913, said charter was duly and legally declared forfeited and was forfeited by the State, since which said time the company had ceased to legally exist as a corporation; that the judgment referred to was rendered in favor of defendant McIlrath November 17, 1922; that prior thereto the corporate existence of the company had ceased and that the judgment is a nullity and the proceedings thereunder void.

May 2, 1923, defendant McIlrath filed his motion to dissolve the temporary injunction on the ground that plaintiffs' amended petition showed on its face that plaintiffs are not entitled to the relief prayed because said petition states that plaintiffs' right to bring the action was based solely upon a warranty deed dated April 19, 1921, from the corporation and that said corporation had its charter forfeited in the year 1913. The cause came on for hearing on the same day, May 2, 1923, at which time, by leave of court, defendants

refiled their separate answers to the amended petition and plaintiffs refiled their replies to said separate answers, and defendants filed their motion to dissolve the temporary injunction which was overruled and defendants excepted.

Thereupon plaintiffs offered in evidence the record of the judgment of McIlrath against the corporation, dated November 17, 1922, the records of the Recorder of Deeds of Jackson County, showing deed of the corporation to Weil and Kupfer dated and acknowledged April 19, 1921, and said record showing a deed from Kupfer and wife to Strauss conveying an undivided one-half interest to the real estate in question dated and acknowledged May 31, 1921; the general execution in the case of McIlrath v. Mendelsohn-Strauss Realty Company, with the sheriff's return showing levy; the written direction to the sheriff by the attorney of McIlrath to levy on the interest of the corporation in the real estate, describing it; the certificate of levy made by the sheriff, describing the property; the notice of sheriff's sale of the property to be held February 8, 1923; the affidavit of publication of said notice; the certificate of the Secretary of State of the State of Missouri, reciting the forfeiture of the charter by reason of the failure of the corporation to comply with the annual registration laws approved March 27, 1913, and that there was on the 2d day of December, 1913, in pursuance with the provisions of section 10, page 169 of the 1913 Session Laws, caused to be entered the following: "25648. Mendelsohn-Strauss Realty Company, Kansas City, charter ferfeited December 2, 1913."

The only other or further evidence offered in the case was the testimony of plaintiff Strauss from which it appears that prior to 1913, Strauss owned the real estate in question, sold a half interest therein to Mendelsohn for $14,500, whereupon he and Mendelsohn organized the Mendelsohn-Strauss Realty Company, a corporation, which took the whole title to the real estate. Upon the organization of the corporation, stock was issued and Mendelsohn received one-half of the shares. Strauss owned the other one-half, but carried one share in the name of Kupfer. Mendelsohn and Strauss and Kupfer were the only stockholders at any time and were the three directors. Kupfer in fact did not own the share of stock, but held it for Strauss. Kupfer and Strauss were uncle and nephew. After the incorporation, Strauss and Mendelsohn advanced about $4000 each for additional improvements upon the ground. The corporation never at any time owned any other property, and its business was handled as a corporate concern, according to this witness, by Mendelsohn, the president, until 1921; that Strauss was at one time secretary and later vice-president; Kupfer was one of the officers and at one time secretary; there was no meeting of the board of directors at any time after 1913; they did not transact any business in that way at all; there was no

meeting of the directors to authorize or pass upon the execution of the deed; at the time the deed was made the property should have been worth all of $40,000; witness did not know whether Mendelsohn turned over his stock in the corporation for the money paid by Weil. Witness has his own stock and does not know whether Weil has Mendelsohn's stock. Mendelsohn sold whatever he had to Weil; Mendelsohn took it upon himself to collect all rents; he handled the business of the corporation, and on the first day of each month would send a check to Strauss for his part of the income. The corporation did not maintain a bank account; he was not familiar with the records kept by Mendelsohn. On April 13, 1921, he received a letter from McIlrath, together with a statement of indebtedness of the company to him on account of a broker's commission claimed to have been earned by McIlrath, and five or six days before the deed of April 19, 1921, was executed, purporting to convey from the corporation to Weil and Kupfer the real estate in question. The letter and statement was demanding a commission claimed to be due in connection with securing a purchaser of the property. Strauss turned the letter over to Mendelsohn telling him that whatever claim McIlrath had should be taken care of by him as Strauss had sold nothing and retained just the same as before the sale, and he turned the letter over to him to take care of because Strauss was not benefited either way by it. Witness claims that the transactions prior to the execution of the deed of April 19, 1921, were merely an agreement, and an arrangement, and an understanding existing among Mendelsohn, Strauss and Weil whereby Weil was to purchase from Mendelsohn the latter's interest in the corporation for $18,500; that this amount of money was paid to Mendelsohn personally and no part of it or any other sum was paid, or contemplated to be paid, to the corporation; all that Weil took was Mendelsohn's interest in the corporation, and all that he was to have; that the interest of witness was not to be affected in any way, but to remain the same; that Mendelsohn sold whatever he had to Mr. Weil; that the interest of the witness was not to be disturbed but to remain the same and this was the agreement between witness and Weil; no money or consideration ever passed to the treasury of the corporation on account of the alleged conveyances from the corporation to Weil and Kupfer, or from Kupfer to Strauss. The form of the transfer of the property to Weil and Kupfer and from Kupfer back to Strauss was suggested as the proper method and form of transfer by Kupfer as an attorney; and when asked the reason for such advice, witness said: "Really I don't know his reason. He was acting as an attorney, and I thought he knew what he was talking about, and I took his suggestion." The witness further said that at the time he knew of the claim made by McIlrath; that he did not then know that the charter of the corpo-

ration was forfeited and had received no notice of it, and did not learn it until recently; that he was the only one who took any interest in defending the suit which McIlrath brought against the corporation; that he employed the attorneys for the corporation and paid them personally, and appeared in person at the trial to defend the case; the deal was with McIlrath before the execution of the deeds; he thought that Mendelsohn should take care of it.

Mr. Weil was no present at the trial of this case, and it appears that Strauss made the verifications to all of the pleadings filed, and is the only person who appeared and the only one who testified. The purported corporation deed was signed, "Mendelsohn-Strauss Realty Company by Louis A. Mendelsohn, Pres. Benjamin R. Strauss, Secretary." The corporation seal was attached. The acknowledgment and affidavit to this deed was made by Mendelsohn in the usual form of a corporation acknowledgment.

The above was all of the evidence. At the close, defendants offered a demurrer which was refused. Defendants again filed their motion to dissolve the injunction which was overruled. The court entered the following decree:

"Thereupon, the defendants rested their cause upon the evidence introduced by the plaintiffs. Thereupon, the court having read the pleadings and heard all the testimony and evidence introduced in the cause, and being fully advised in the premises, and after hearing the arguments of counsel, does find all the issues raised by the plaintiffs' amended petition for injunction and replies and defendants' separate answers, for the plaintiffs and against the defendants, and finds that the charter of incorporation issued to the Mendelsohn-Strauss Realty Company by the Secretary of State of Missouri, was legally forfeited on December 2, 1913, that the judgment heretofore rendered in the circuit court of Jackson county, Missouri, at Kansas City, in favor of the defendant, George D. McIlrath and against the said Mendelsohn-Strauss Realty Company, in cause 160609, recorded in Book 512 at page 187, was and is a nullity and void and no execution could lawfully issue thereunder.

"Now, therefore, it is hereby ordered, adjudged and decreed by the court that the defendants, Fred A. Richardson, sheriff of Jackson county, Missouri, and George D. McIlrath, jointly and severally be and they are permanently enjoined and restrained from selling or proceeding, or attempting to proceed, with the sale of the following described property located and situate in Kansas City, Jackson county, Missouri, to-wit: All of Lot 14 and the south ten feet of Lot 15 in block one, in Lahoma Addition to Kansas City, as the same is marked and designated on the recorded plat thereof, under and by virtue of a general execution in 160609, issued from the office of the clerk of the circuit court of Jackson county, Missouri, at Kansas

City, in favor of the defendant, George D. McIlrath against Mendelsohn-Strauss Realty Company, in cause 160609, wherein the said George D. McIlrath was plaintiff and the said Mendelsohn-Strauss Realty Company was defendant, and defendants, jointly and severally, are hereby permanently and perpetually enjoined and restrained from advertising a sale of the interest of the said Mendelsohn-Strauss Realty Company in and to the aforesaid property or in any wise whatever attempting to sell, transfer, assign or convey any title or interest, purported or otherwise, of the said defendant in and to the aforesaid property, and the said defendants, jointly and severally, are hereby further permanently and perpetually enjoined and restrained from doing any act or thing, under the said judgment and execution, or under any other execution issued in the said cause, to-wit: *George D. McIlrath v. Mendelsohn-Strauss Realty Company*, insofar as the title and interest of the said corporation, purported or otherwise, in and to the aforesaid property, is concerned.

"It is further ordered, adjudged and decreed by the court that the restraining order and the temporary injunction heretofore issued in this cause, be and the same is hereby continued in full force and effect, perpetually and permanently.

"And it is further ordered, adjudged and decreed by the court that the said judgment rendered in the said cause No. 160609, hereinbefore described, is a nullity and void and of no legal force and effect.

"And it is further ordered, adjudged and decreed by the court that plaintiffs herein have and recover of and from the defendant, George D. McIlrath, the costs of this action, and that execution issue therefor."

## OPINION.

The assignments of error made by appellants are several in number, but all are covered by the principal one which is, that under the pleadings and the evidence the judgment should have been for defendants.

We will dispose of these assignments in proper order. In the state of the record, it is not difficult to seek and find the equities in this case. It is obvious that the judgment should have been for defendants upon the pleadings, and also upon the evidence. The amended petition fails to state a cause of action for injunctive relief under the statute for the reason that the title under which plaintiffs claim is based upon a deed executed subsequent to an alleged forfeiture of the corporate charter of the company, purporting to execute the deed, and without any allegation that the corporation was thereafter revived and was empowered to make a deed at the time plaintiffs received their conveyances. Plaintiffs are bound by their petition, and it shows upon its face that plaintiffs have no

such title as contemplated by the statute upon which to base their claim for the relief prayed. The original motion to dissolve the temporary injunction upon the pleadings should have been sustained.

The assignment that the amended petition and reply constitute a departure does not call for consideration and disposition because it was waived by the filing of answers and proceedings to trial. [Crecelius v. Milwaukee Ry. Co., 284 Mo. 36, 37.]

Did the allegations in respect to the void judgment and the decree of the court to that effect, constitute a collateral attack upon a final judgment? The general rule certainly is that the lack of jurisdiction of the court rendering a judgment must appear on the face of the record before that judgment can be questioned in a collateral proceeding. [Leahy v. Mercantile Trust Co., 296 Mo. 561, 595; Eversmeyer v. Broyles, 280 Mo. 99, 109; Howey v. Howey (Mo.), 240 S. W. 450; York v. Stigall, 204 Mo. 407, 410.] This general rule is restated and reaffirmed in the most recent expression of the Supreme Court in the case of Jefferson City Bridge & Transit Company v. Blaser, 318 Mo. 373, 300 S. W. 778; but in this case an exception, or distinction, is made on account of the statutory remedy for equitable relief by way of injunction, and after reference to the sections of the statute including the one under which this suit is brought, the court says on page 379 of the opinion:

"It thus appears that our statutory law has provided that in a proper case the enforcement of a judgment can be restrained by a bill in equity, and whenever such a proceeding necessarily tends to impeach the judgment, the enforcement of which is sought to be restrained, although it may not in turn seek to set aside, cancel or annul the judgment, the proceeding should be construed as a direct attack."

From the foregoing it is apparent that in a proceeding of the character of the instant case, where plaintiffs seek equitable relief against an alleged defective judgment, the court will consider and ascertain the true character and force of said judgment, not necessarily for the purpose of declaring the judgment void, but for the purpose of ascertaining the equitable circumstances in the case, and as an aid to the court in dispensing equity in the pending cause.

The decree in this case holding the McIlrath judgment to be a nullity is erroneous because based upon the view that it was obtained subsequent to a forfeiture of the corporate charter, and that the proof adduced was sufficient to show the fact of forfeiture. The proof was not sufficient to show such fact. Under the law applicable at the time of the alleged forfeiture (Laws of Missouri 1913, page 167) provision is made for the annual registration of corporations and for the suspension of the charter or license as provided by section 8, and for forfeiture of the corporate rights and privileges conferred

1000

upon it. by the certificate or license on certain conditions provided in sections 8 and 10 of said Act. Section 8 provides that in the event of failure to register or otherwise comply with the requirements of the act that the charter or license shall be suspended, "and it shall be the duty of the secretary of state annually, as soon after the first day of October as practicable, to certify to the recorder of deeds of the county in which such suspended corporation is located, the fact of such suspension, and the recorder of deeds shall post the name of such corporation in a conspicuous place in his office for a period of twenty days, and at the expiration thereof not later than the first day of December, certify to the secretary of state that the name of such suspended corporation was so posted in said recorder's office."

It has been held by the Supreme Court and by this court that compliance with section 8 is a necessary prerequisite to a legal forfeiture by the secretary of state under section 10, and that the mere proof of entry of forfeiture by the secretary of state upon his records is not, in itself, sufficient evidence of the fact of forfeiture. The secretary of state must have in his office what is declared by section 12 to be sufficient evidence upon which he may declare the forfeiture, that is, the certificate of the recorder of deeds that the name of the corporation was posted as required by section 8. [Woodward Hdwe. Co. v. Fisher, 269 Mo. 271, 279 et seq; Sutter v. Metropolitan Ry. Co. (Mo. App.), 208 S. W. 851, 853; Crawford v. Dahlenberg, 321 Mo. App. 600, 606, 283 S. W. 65, 68.]

The application of the foregoing rule is called for especially in this case for the reason that the secretary of the company answered and defended the McIlrath suit in the name of the corporation, and testified that the company continued to transact business as a corporation until the execution of the deed in April, 1921; and that he never at any time received any notice of forfeiture; and also by the mute evidence of the affidavit and acknowledgment contained in the deed, and made by Mendelsohn, the president, that at the date of the ded he was president of the corporation and that he executed same by authority of its board of directors. The evidence was insufficient to show the non-existence of the corporation at the time the judgment was rendered, and the decree declaring the judgment void was erroneous for want of evidence to support it.

The decree is further erroneous because it found "all the issues raised by the pleadings" for the plaintiffs and against the defendants, and might be asserted as *res adjudicata* upon all questions within the purview of the pleadings which might have been determined by a responsive judgment. [Spratt v. Early, 119 Mo. 491, 501.] It declared the McIlrath judgment a nullity and by inference at least determined the validity of the deeds which were alleged to be fraudulent. The decree is further erroneous in that it not only

enjoined defendants from proceeding under the execution in question, but they were also "further permanently and perpetually enjoined and restrained from *doing any act or thing* under said judgment and execution, *or under any other execution* issued in the said cause, to-wit: George D. McIlrath v. Mendelsohn-Strauss Realty Company, in so far as the title and interest of the said corporation, purported or otherwise, in and to the aforesaid property is concerned." This portion of the decree finally forecloses every path of procedure to the judgment creditor to do *any act or thing* by way of seeking to collect his judgment out of the property of the corporation. The rights of the judgment creditor should not have been thus foreclosed. He had the right to institute his suit to cancel the deeds in question, if necessary, in order to clear the way for the effective application of the property of the corporation in the payment of his debt, evidenced by a final judgment. This has been recommended as the better course. [Oldham v. Wade, 273 Mo. 321, 248 et seq.] However, under the same authority, and under our view of the evidence in the instant case, the judgment creditor would have the right to proceed to sell the interest of the corporation in the real estate in the first instance and subsequently sue to eliminate the alleged fraudulent deeds if he so desired.

Under the evidence in this case the decree should have been for, the defendants. The evidence not only fails to show any equity on the part of plaintiffs, but affirmatively shows a lack of equity. The defects in the deeds under which the plaintiffs claim affirmatively appear. They are void as to creditors. They were executed not only without authority from the board of directors, but wholly without any consideration to the corporation. The evidence shows that plaintiff Weil merely purchased the stock or interest of Mendelsohn in the corporation, and that was all that he was to receive, and all that he was entitled to have; and that Mendelsohn received the compensation paid for his interest and the corporation received nothing. The evidence further shows that the execution of these conveyances was adopted as the alleged means of carrying out the transaction between Mendelsohn and Weil in order to vest in Weil, Mendelsohn's interest in the corporation. This method was adopted upon the suggestion of Kupfer who was not only an interested party, but who appeared to be acting as legal adviser at the time. At this particular time it is important to note that immediately prior to the execution of the deeds, McIlrath had demanded and was pressing for payment of his claim; that Strauss had received notice thereof; that there was evidently a dispute or controversy between Strauss and Mendelsohn as to which one should settle with McIlrath; Strauss thought Mendelsohn should take care of it, and delivered the bill to him for his attention for the reason that Strauss had sold nothing,

and the only sale made was the interest or stock of Mendelsohn in the corporation to Weil. In such a situation it is not difficult to understand the purpose and motive prompting these parties in adopting the suggestion of Kupfer. All of them were evidently afflicted with a motive adverse to the payment of McIlrath. Their sole purpose was to defeat this claim. There is no doubt that the whole proceeding was well understood among all of the parties, including Weil. He was buying merely the interest in Mendelsohn in the corporation, paid Mendelsohn for it, and all that he was entitled to receive was the stock or interest in the corporation owned by Mendelsohn. Weil did not appear at the trial, nor testify, and it will be assumed that his evidence would not aid his case. Standing mute at the trial, it will be presumed that he acceded to the improper and illegal method of conveying all of the corporate assets to the exclusion of creditors. The testimony of his co-plaintiff demonstrates beyond question that neither of the plaintiffs has any right to be heard in equity. Weil had no right to a deed from the corporation and could not compel specific performance for one. In such situation injunctive relief is denied. [Lackawanna Coal & Iron Co. v. Long, 231 Mo. 605.]

The deeds were fraudulent and void for the further reason that they were not, and could not have been, legally authorized by the directors because of personal interest. It would have been impossible to assemble a qualified quorum of directors to authorize the deeds. Mendelsohn, Strauss and Kupfer were the ostensible stockholders and directors. Weil was the real owner of Mendelsohn's stock. All of them were interested parties. Kupfer and Weil were the immediate grantees and Strauss a beneficial grantee in the first deed. They were disqualified to vote as directors. [Hill v. Rich Hill Coal Mining Co., 119 Mo. 9, 929; Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311, 327.] Public policy and good conscience do not permit stockholders and directors to convey, or distribute, all of the corporate assets for their sole benefit, and in a manner inimical to creditors.

We have not overlooked, or failed to consider, the brief and argument of respondents. They depend primarily upon the erroneous and unwarranted assumption that the McIlrath judgment is void, and that Weil is an innocent purchaser of a one-half interest in the real estate from the corporation. The evidence conclusively shows that such claims are entirely futile. They further urge that the deed of the corporation should be sustained, for Weil's benefit at least, on the theory that, while executed in the name of the corporation, it should be given the effect of a conveyance by the trustees of the assets because signed by Mendelsohn and Strauss, the sole stockholders. The petition was not based upon any such theory, but on the contrary, expressly alleged plaintiffs' claim to be derived from a deed of the corporation itself. But even if treated as a trustee's

deed it avails nothing for Weil, and is still void as to creditors. It was without consideration and for the purpose of hindering them. Trustees of a corporation, in case of forfeiture, must pay its debts and cannot deal with the corporate assets in a manner to defeat creditors. [Section 9816, R. S. 1919.] There is no merit in any such contention or assumed position.

Playing hocus-pocus in the similitude of a juggler is not a becoming posture in which to pray for anything in the house of equity. Further comment upon the disingenuous conduct of all of these parties is unnecessary. It is enough to say that, under the facts and circumstances in this case, plaintiffs are not in position to appeal to a court of conscience and cannot have equitable relief.

We are also of opinion that defendant McIlrath is entitled in this proceeding to the affirmative relief against the deeds which was requested in his answer. The issue was clearly made and drawn by the pleadings as to whether the deed from the corporation to Weil and Kupfer and the deed from Kupfer to Strauss were fraudulent and void as to this creditor. Under the evidence it is shown, and our conclusion is, that these deeds are clearly fraudulent as to creditors of the corporation. Under the circumstances, defendant, McIlrath, is entitled to have them so declared in this proceeding, and not be compelled to resort to an independent and separate suit to test their validity as against his right to subject the property of the corporation to the payment of his debt.

Therefore, adjudging the case on the merits, it results that the decree of the trial court should be reversed and the cause remanded with directions to set aside the judgment entered, sustain the motion to dissolve the injunction, decree the deeds in question to be fraudulent and void as to the judgment creditor McIlrath, and dismiss plaintiffs' bill for want of equity. The Commissioner so recommends. *Barnett, C.*, concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is hereby adopted as the opinion of the court. The decree of the trial court is reversed and the cause remanded with directions to set aside the judgment entered, sustain the motion to dissolve the injunction, decree the deeds in question to be fraudulent and void as to the judgment creditor, McIlrath, and dismiss plaintiffs' bill for want of equity. All concur, except *Trimble, P. J.*, absent.