Ida KOPLAR, Plaintiff-Respondent,

v.

STATE TAX COMMISSION et al.,
Defendants-Appellants, and
thirteen other cases.

Nos. 46616–46629.

Supreme Court of Missouri,

Division No. 1.

March 9, 1959.

James L. Williams, Jackson County Counselor, Robert A. Sniezek, Asst. County Counselor, Kansas City, for appellants, Jackson County Court, Clerk and Collector, Jackson County Court House, Kansas City, Missouri.

Robert L. Hecker, Morrison, Hecker, Buck, Cozad & Rogers, Ilus W. Davis, John H. Windsor, Jr., Dietrich, Tyler, Davis, Burrell & Dicus, Kansas City, for respondents.

DALTON, Judge.

This consolidated case involves fourteen separate appeals from orders and judgments of the Circuit Court of Jackson County setting aside decisions of the State Tax Commission with reference to the assessed valuation of certain specifically described real estate. The assessments were made as of January 1, 1956, and involve fourteen separate pieces of real property (land and improvements) in Kansas City, Jackson County. The respective owners of the mentioned properties contended that the county assessor's 1956 assessments of these properties were unconstitutionally and unlawfully discriminatory in that said properties were intentionally, arbitrarily and systematically overvalued as compared with the valuation of other real property in Jackson County. Obtaining no relief by successive appeals to the Jackson County Board of Equalization and to the State Tax Commission, the said owners of the mentioned properties sought judicial review of said decisions of the State Tax Commission in the Circuit Court of Jackson County where the relief sought was, for the most part, granted. The Circuit

Court in its several judgments made its own findings as to the value of the respective properties and as to the assessment that should be placed upon each particular tract and further ordered the State Tax Commission to modify its decisions accordingly. Defendants have appealed to this court from the orders and judgments so entered in favor of the property owners, respondents herein.

■ This court has jurisdiction of the appeals because the cases involve the construction of the revenue laws of this state. Art. V. Sec. 3, Const. of Mo.1945, V.A. M.S.; May Department Stores Co. v. State Tax Commission, Mo.Sup., 308 S.W.2d 748; State ex rel. Lindell Tower Apartments v. Guise, 357 Mo. 50, 206 S.W.2d 320.

Each of the respective properties herein involved had been assessed by the assessor of Jackson County for taxation purposes and their respective values had been fixed and determined as of January 1, 1955 for the year 1955 and, subsequently, as of January 1, 1956 for the year 1956. The 1956 assessments made material increases over the 1955 assessments. The increases were made by the assessor after the receipt of a letter from the State Tax Commission (hereinafter referred to) stating that the assessed valuation of Jackson County would have to be increased ten percent in order to meet certain minimum requirements of said Commission. The owners of the respective properties contend that the assessment of each property, "with or without the 1956 increase, was and is unlawfully discriminatory."

After the assessments of January 1, 1956, were entered on the tax books of the assessor, the respective owners of the several properties here involved took appeals, as stated, to the Jackson County Board of Equalization, which board, while in session pursuant to law, reviewed the several appeals from the assessor's valuations for assessment purposes as of January 1, 1956,

and, except in one instance hereinafter referred to, the Board affirmed all assessments as entered by the county assessor.

Thereafter, as stated, the respective owners of the several properties made timely and proper appeals to the State Tax Commission. Section 138.430 RSMo 1949, V. A.M.S. A separate appeal was taken by the owner of each specific property here involved. Each owner complained of the 1956 valuation of his property for tax purposes. Twelve of these cases so taken on appeal to the State Tax Commission involve the assessed valuation of downtown office building properties in Kansas City. Respondents say that the basic issues and contentions in all of these cases are the same and that, "in general", they can be presented and considered without reference to the specific facts relating to specific properties, which specific facts will be later summarized. Hearings on the several appeals were thereafter ordered and a single hearing had before the Commission. It was agreed that a single record would be made which would be "applicable to all of these cases," supplemented by certain matters applicable only to particular cases. The Commission, thereafter, issued its notices of decisions and fixed the valuation of the respective properties for tax purposes. All assessments entered by the Jackson County Board of Equalization were affirmed, except as to one of the properties (the one instance heretofore mentioned), where the assessment of the particular property was further reduced.

Thereafter, petitions for review of the several decisions of the Commission with reference to the valuations of the several properties for tax purposes were duly filed in the Circuit Court of Jackson County under the "Administrative Procedure and Review Act," Chap. 536, RSMo 1949, V.A. M.S.; Section 22, Art. V, Const. of Mo. 1945. Transcripts of all proceedings before the Commission on the several appeals from the Jackson County Board of Equalization and of all evidence heard by

the Commission were thereafter duly filed in the Circuit Court of Jackson County.

Only the property owners, respondents on the present appeals, offered any evidence in the hearing before the State Tax Commission. No evidence was offered in support of the original assessments, or as affirmed and modified by the Jackson County Board of Equalization. Some of the evidence heard by the Commission was applicable to all the cases and some was applicable only to specific cases. The evidence applicable to all cases tended to show that the Commission had estimated that the average ratio of assessments (in aggregate values) for Jackson County prior to January 1, 1956, was 27.2 percent of the considered or market value of all real property. As to the value of such evidence for certain purposes see May Department Stores Co. v. State Tax Commission, Mo. Sup., 308 S.W.2d 748, 761(17). The Commission had also determined that for the purpose of equalization among counties 30% of market value was a minimum figure it would accept. In order to equalize the assessments in said county at approximately 30 percent of value, as a minimum figure, the Commission had advised the assessing officials of Jackson County to raise valuations for 1956 in said county approximately $60,000,000 or to make about a 10 percent increase for the county as a whole (in the aggregate), so as to comply with the "Commission's program for equalizing property assessed valuations between Missouri counties." It was said, however, that "the Commission has not attempted to deviate from what the true value of real property is and the basis for assessment is still, and always has been, true value." There was evidence that, at the time the mentioned letter was received by said assessor, a major portion of the assessment books for 1956 had been made up, but by increasing assessments upon certain properties in the downtown and industrial areas, the assessor was able to increase the assessed valuation of real property in Jackson County by approximately $20,000,000. No increases in residential property, farm land or other real estate in the county were made. On behalf of the property owners, the county assessor testified that there was no set formula or plan for making the increases and the increases varied from 10 to 30%. Some properties were inspected but others were not. Of the approximately 180,000 parcels of real property on the assessment rolls of Jackson County, the assessments of only 200 or 250 pieces of property were increased after receipt of the said letter from the State Tax Commission. The increases were on properties the said assessor considered low in valuation for assessment purposes. It was the intention of the assessor to increase the assessment in one district generally and then to expand from district to district in future years in order to complete the reassessment of real property in the county. With the personnel then available such increases could be made in a three or four year period. No other evidence of what plans the assessor may have had was shown and the assessor stated that he had no fixed formula in making these increases.

The assessor further testified that the assessments on downtown properties should be around 50%, about 30% on older apartment properties, 28 to 40% on newer types of apartment properties, 23 to 25% on older houses. He further testified that the assessor endeavors to assess new residential property at about 33 to 35%, new apartment property at about 40%, and new office buildings at about 50%. He said that all of these percentages were with relation to current market value. The assessor admitted that he put a higher assessment "on office space" than on anything else. The assessor also testified that the last general reassessment of real estate in Jackson County was 1940, and that there had not been any over-all survey or reappraisal of assessments since that time. That he was trying to get parcel by parcel, and will get parcel by parcel if given time.

The evidence also showed that there was a marked increase in the number of vacant square footage of rental office space in office buildings in downtown Kansas City; and that the downtown business area had felt the effect of the construction of over one million square feet of office space outside of the downtown area. The testimony presented by the property owners at the hearings before the State Tax Commission, in addition to the foregoing, consisted of the opinions of witnesses as to current market value of the properties in question. The highest market value placed on the respective properties is set out below: Case No. 46,616, Waltower Building $600,-000; Case No. 46,617, 1001 Walnut Building $450,000; Case No. 46,618, 1005 Walnut Building $275,000; Case No. 46,619, Dwight Building $1,500,000; Case No. 46,-620, Insurance Exchange Building $800,-000; Case No. 46,621, Finance Building $300,000; Case. No. 46,622, Fairfax Building $1,700,000; Case No. 46,623, Van Brunt House $60,000; Case No. 46,624, Van Brunt Lot $10,000; Case No. 46,625, Argyle Building $577,600; (actually the latter figure was arrived at by applying the proportionate share of the appraisal of $900,000 to the tract involved on appeal); Case No. 46,626, Bryant Building $2,500,-000; Case No. 46,627, Professional Building $2,150,000; Case No. 46,628, Law Building $690,000; and Case No. 46,629, National Fidelity Life Building $775,000.

In determining the respective appeals the State Tax Commission made findings of fact and conclusions of law in each case. The findings vary according to the description of the property, the evidence of its value, the amount of the assessment, the names of the witnesses and the findings and conclusions, but the decision of the Commission in each case (omitting preliminary recitals and the names of the witnesses) is substantially in the form used in Case No. 46,618, as follows:

## "Findings of Fact

"That petitioner appeared before the board of equalization of Jackson County prior to the filing of this appeal. That for the year 1956 the assessor of Jackson County assessed petitioner's property described herein at $225,000. That the board of equalization of Jackson County reviewed said assessment and found that no correction or adjustment was necessary.

"That ——— testified that the current fair market value of the property described herein was possibly $450,000. That ——— is the duly authorized agent of the owner of the property described herein. That the Commission finds the testimony of ——— to be not credible.

"That petitioners witness, ———, testified that the fair market value of said property was $450,000 and that the physical value of said property would be higher than his appraisal value. That the Commission finds the testimony of ——— to be not credible. That the appraisals made by petitioner are predicated on the use of heavily weighted and generous capitalization factors.

"That the assessor of Jackson County is in the process of re-assessing all real property in said county. That because of lack of personnel the re-assessment program will necessarily extend over a period of three or four years. That the assessments which were raised for the year 1956 were assessments which were low, in the assessor's opinion, in comparison to assessments of other real property in Jackson County. That the Commission viewed petitioner's property and believe it to be assessed on an equal basis with other comparable property in Jackson County. That the Commission did not issue orders to Jackson County requiring that real property be assessed at any percentage of its true value.

## "Conclusions of Law

"That every owner of real property shall have the right of appeal from the local

boards of equalization under rules prescribed by the State Tax Commission. Said Commission shall investigate all such appeals and shall correct any assessment which is shown to be unlawful, unfair, improper, arbitrary or capricious. The real property shall be assessed for tax purposes at its true value or such percentage of its true value as may be fixed by law. That there is no such thing as an absolute true value of land. The values mentioned in the Statutes are the valuations of the officials whose duty it is to make them. Land is not a commodity which has a fixed market value at a given period. The value is determined always by the estimate of the party who values it.

"That the values mentioned in the statutes for the purpose of assessment and taxation of real property are not the same as the economic value of such property. That all presumptions are in favor of the correctness of the valuations of the officials whose duty it is to make them; and their good faith and the validity of their acts are presumed.

"That the provisions of the Constitution and the laws of the State of Missouri requiring uniformity and equality in the assessment and taxation of real property means practical uniformity and equality and not absolute uniformity and equality.

"That the evidence adduced by the petitioner herein does not show that the assessed valuation of the property described herein is unlawful, unfair, improper, arbitrary or capricious.

"Decision

"The Commission, after giving consideration and study to the evidence, records and data submitted on behalf of the petitioner and the assessing officials, finds that the proper assessed valuation of petitioner's property should be $225,000. It is so ordered."

The circuit court's judgments from which the present appeals were taken may be summarized herein by a short statement with reference thereto and by reference to an exhibit hereinafter set out. The circuit court found (with reference to the assessment of the properties named or described in column two of the exhibit set out subsequently, which properties were assessed as of January 1, 1956, for the amounts indicated in column 3 of the exhibit) that the said assessments were (1) in violation of constitutional provisions and unauthorized by law; (2) unsupported by competent and substantial evidence upon the whole record; and (3) arbitrary, unreasonable and capricious; that the increases in the assessments in 1956 over the assessments of 1955 of the respective properties "was not made in contemplation of the value of such property and (sic) without regard thereto * * *" and, therefore, that such findings and decisions of the State Tax Commission should be modified as thereinafter provided.

The court further found that the records before the Commission showed that the assessor for Jackson County had previously assessed the said respective properties for tax purposes as of January 1, 1955, at the figures indicated in column four of the exhibit below. The court found that the considered market value of the properties arrived at by doubling the 1956 50% of true value assessment (the assessor having testified, as stated, that these downtown properties were assessed by him at a ratio of around 50% of market value) was consistent with and not disproportionate to the evidence offered before the Commission by the respective owners of the several properties (see evidence supra as to owners' evidence of market value). By its judgment the court not only fixed the value of the respective properties (column five of the exhibit) but further determined the valuation for assessment for tax purposes for the year 1956 of each of the properties (column six of the exhibit) in order to remove the discriminatory portion of Commission's assessed value. The court then entered its order that the findings and decisions of the Commission in the sev-

eral cases be modified and the Commission was directed to modify its several findings and decisions "so that it finds and decides that the value for assessment of such property to be" 30% of the true value of the properties as therein determined. By this judgment some owners received all the relief asked and others only a part.

| (1) Case | (2) Building | (3) 1956 Ass't. | (4) 1955 Ass't. | (5) Cir. Ct. Value | (6) Cir. Ct. Ass't. |
|---|---|---|---|---|---|
| 46,616—Waltower | | $ 300,000 | $ 250,000 | $ 500,000 | $ 180,000 |
| 46,617—1001 Walnut | | 225,000 | 205,000 | 410,000 | 135,000 |
| 46,618—1005 Walnut | | 190,000 | 170,000 | 340,000 | 102,000 |
| 46,619—Dwight | | 700,000 | 700,000 | 1,400,000 | 450,000 |
| 46,620—Insurance Exchange | | 500,000 | 450,000 | 900,000 | 270,000 |
| 46,621—Finance | | 140,000 | 115,000 | 230,000 | 90,000 |
| 46,622—Fairfax | | 700,000 | 654,000 | 1,308,000 | 510,000 |
| 46,623—Van Brunt House | | 28,880 | 54,000 | (not fixed) | 18,000 |
| 46,624—Van Brunt Lot | | 8,480 | 8,480 | 16,960 | 5,088 |
| 46,625—Argyle | | 416,160 | 376,160 | 752,320 | 225,696 |
| 46,626—Bryant | | 1,550,000 | 1,400,000 | 2,800,000 | 840,000 |
| 46,627—Professional | | 1,450,000 | 1,300,000 | 2,600,000 | 780,000 |
| 46,628—Law | | 370,000 | 320,000 | 640,000 | 207,000 |
| 46,629—Nat'l. Fid. Life | | 380,000 | 340,000 | 680,000 | 232,500 |

Appellants contend that the trial court erred in entering the judgments appealed from because (1) the questioned decisions of the Commission were not in violation of constitutional provisions and unauthorized by law; (2) the findings of the Commission were supported by competent and substantial evidence upon the whole record; (3) the property in question could properly be assessed at more than 30% of its market value since the record fails to contain conclusive evidence of what the ratio of assessed value of real property was in Jackson County on January 1, 1956; and (4) the court could not determine "the true value and assessed valuations" of the described properties for 1956, as such was not within the jurisdiction of the court to review decisions of the administrative agency de novo, when the actions of the agency involve the exercise of administrative discretion.

It is apparent from appellants' brief that appellants' essential contentions are (1) that the owners of the respective properties "failed to show that their properties were assessed at a greater percentage of true value than other real property in Jackson County; and (2) that "the circuit court exceeded its jurisdiction by finding and instructing the Commission to find the value of and the assessment of these properties as found and determined by the circuit court."

■ In determining the issues presented we must first review certain applicable statutory and constitutional provisions. Section 138.060 RSMo 1949, V.A.M.S.,

provides that "the county board of equalization shall, *in a summary way*, determine all appeals from the valuation of property made by the assessor, and shall correct and adjust the assessment accordingly." (Italics ours.) Section 138.430 RSMo 1949, V.A.M.S., provides that "Every owner of real property * * * shall have the right of appeal from the local boards of equalization under rules prescribed by the state tax commission." The section further prescribes that the "commission shall investigate all such appeals and shall correct any assessment which is shown to be unlawful, unfair, improper, arbitrary or capricious." And see Sec. 14, Art. X, Const. of Missouri authorizing the creation of such an appellate commission. Sections 138.460 and 138.470 RSMo 1949, V.A.M.S. (the latter section has since been amended. Laws 1957, p. 800) deal with the matter of notice and hearings on such appeals to the State Tax Commission and provide for review by the courts as provided by Secs. 536.100 to 536.140 RSMo, V.A.M.S. And see Taney County v. Empire Dist. Electric Co., Mo.Sup., 309 S.W.2d 610; Ulman v. Evans, Mo.Sup., 247 S.W.2d 693. These statutes make a proceeding such as this a contested case, as defined in Sec. 536.010 (3); and we construe them to mean that a de novo hearing before the State Tax Commission is intended. Further, in view of Sec. 536.070 RSMo 1949, V.A.M.S., providing that in contested cases the records and documents of the agency may be offered in evidence and become a part of the record and, also, in view of other sections of Chapter 536 RSMo, V.A.M.S., which were enacted under the authority of Sec. 22, Art. V of the Constitution of Missouri, it is necessary that a record be made from which a judicial review may be had as provided in Sec. 536.140 RSMo, V.A.M.S. And see discussion in State ex rel. State Tax Commission v. Walsh, Mo.Sup., 315 S.W.2d 830, 835; and the holding in State ex rel. State Highway Commission of Missouri v. Weinstein, Mo., 322 S.W.2d 778.

The record presented to the circuit court for review showed that the Commission had before it the 1955 and 1956 assessed valuations of the respective properties. The 1956 assessments, approved by the Jackson County Board of Equalization, were presented on appeal for the consideration of the Commission as provided by the mentioned statutes. Appellants first rely upon the presumption that the assessment valuations of these properties for 1956 were correct and valid by reason of their approval by the Jackson County Board of Equalization. Appellants refer to the recent case of May Department Stores Co. v. State Tax Commission, supra, 308 S.W. 2d 748, 759(13) and, also, to Ulman v. Evans, supra, 247 S.W.2d 693, 697, where this court said: " 'There is no such thing as an absolute true value of land. The "values" mentioned in the statutes are the valuations of the officials whose duty it is to make them. Land is not like commodities which have a fixed market price at a given period. Its value is determined always by the estimate of the party who values it.' State ex rel. Thompson v. Bethards, 320 Mo. 1164, 9 S.W.2d 603, 604. 'All presumptions are in favor of the correctness of tax assessments. The good faith of tax assessors and the validity of their actions are presumed.' 51 Am.Jur., Taxation, Sec. 655, p. 620. See also Wymore v. Markway, 338 Mo. 46, 89 S.W.2d 9, 11; State ex rel. and to Use of Jamison v. St. Louis-San Francisco Ry. Co., 318 Mo. 285, 300 S.W. 274, 277.' "

■■ The mentioned presumption, however, was one of fact and was rebuttable and only served the place of evidence, until the respondents, the owners of the mentioned properties, came forward with the evidence hereinbefore set out. The presumption in favor of the good faith of the taxing officials and of the correctness of the assessments ceased to exist when the evidence of unlawful discrimination appeared. The mentioned presumption could not be considered by the Commission in de-

termining the issues before it in view of the evidence shown. State ex rel. De Weese v. Morris, 359 Mo. 194, 221 S.W.2d 206, 208; Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136, 139.

■ We have seen that the assessor of Jackson County testified before the Commission that in assessing real property in said county he had attempted to ascertain the current market value of the property to be assessed; and that in making assessments he attempted to assess new residential property in Kansas City at "about 33 to 35 percent of its market value, older houses at "23 to 25%", new apartment property at 40%, older apartment properties at "about 30%", and office buildings at "about 50%." He further testified, as stated, that the assessments in question on these downtown properties had a "common ratio of assessment to market value"; and that, after receipt of the letter directing the 10% increase in Jackson County, he had inspected individual properties and made increases of 10, 20 and 30% of the former assessed valuations and increased the assessment valuation of the county about twenty million dollars. Around 200 to 250 tracts were increased in the downtown area out of a total of approximately 180,000 in Jackson County. All of the properties here in question, except three, were increased over their 1955 assessments. The assessor admitted before the Commission that he had put a higher assessment on office space than anything else. The assessor's testimony concerning his assessment of the mentioned properties at "around 50%" of their current market value was supported by the testimony of the owners and their agents and the expert witnesses who fixed the value' of these properties at approximately double the amount of the January 1, 1956 assessments. However, the Commission found that (except as to one tract) the testimony of all of the witnesses who testified before them in the several cases concerning the current market value of these properties was "not credible" testimony. Among these witnesses were some eight professional real estate appraisers whose qualifications, as such, were not questioned in the hearings. Appellants insist that the record shows that the Commission duly considered the testimony of the "real estate experts" and found their testimony "to be not credible." No one questions the rule that an administrative agency in determining a question of fact may pass upon the credibility of witnesses and where a claimant has the burden of proof may decide a claim solely upon a finding of lack of credibility of uncontradicted and unimpeached testimony offered in support of the claim. Scott v. Wheelock Bros., 357 Mo. 480, 209 S.W.2d 149, 151(3); State ex rel. Rice v. Public Service Comm., 359 Mo. 109, 220 S.W.2d 61, 65(8–10); May Department Stores Co. v. State Tax Comm., supra, 308 S.W.2d 748, 761. Appellants have reviewed the detailed facts and circumstances affecting the credibility, weight and value of the testimony of these expert witnesses and insist that the conclusions of the witnesses were due to "heavily weighted and general capitalization factors;" and that the Commission could disbelieve the witnesses and reject the conclusions. We do not consider the issue material here because, even if the mentioned testimony was not credible, the issue remains as to whether the Commission's decisions are supported by competent and substantial evidence upon the whole record.

Appellants insist that the assessor's testimony does not show that respondents' properties "are assessed at a 'greater percentage' than other property owners in the county." Appellants also insist there is no evidence that the questioned assessments are "above other downtown and industrial property." Appellants then seek to set up sub-classifications of city real estate not shown to be authorized by any statute.

We have seen that no evidence was offered before the Commission in support of any of the original assessments, or as affirmed or modified by the Board of Equalization of Jackson County. The Commission made no finding that the testimony of the county assessor was "not credible" tes-

timony. The only reference to his testimony in the Commission's findings is that he was of the opinion that "the assessments which were raised for the year 1956 were assessments which were low * * * in comparison to assessments of other real property in Jackson County." This finding was not inconsistent with respondents' position, supported by their evidence, that respondents' properties were assessed at a greater percentage of true value than other real estate in Jackson County. Further, the assessor's testimony supported respondents' position that their downtown office building properties were in fact assessed at a far higher percentage of market value than other real estate in Jackson County. The testimony of the assessor who made the assessments in question, supported as it was in certain respects by other testimony in the record, was sufficient to rebut any presumption that the assessments in question were correct, valid and non-discriminatory.

■ The testimony of the assessor, who made the questioned assessments, if believed, was sufficient to show an intentional discrimination resulting from a purpose and design to discriminate by a systematic method of assessing these properties at a greater percentage of true value than the assessment of other real estate in Jackson County and his testimony shows that the questioned assessments did not result from mere error in judgment which in turn resulted in inequality in valuation. The evidence offered by respondents before the State Tax Commission was sufficient to show that the assessments in question were arbitrary, unreasonable and capricious and were made in violation of respondents' constitutional rights. Boonville Nat. Bank v. Schlotzhauer, 317 Mo. 1298, 298 S.W. 732, 740, 55 A.L.R. 489; Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 300 S.W. 778, 785; Brinkerhoff-Faris Trust & Savings Co. v. Hill, 328 Mo. 836, 42 S.W.2d 23, 27. The Commission could not arbitrarily disregard and ignore the competent, substantial and undisputed testimony of the assessor, who was not shown by the record to

have been impeached or disbelieved by the Commission and base its findings upon the personal opinions of its members unsupported by any sufficient competent evidence in the record. Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 229 S.W. 2d 563, 565.

■ On the record presented to the trial court for review, it is apparent that the Commission's findings and decisions approving the assessments are not "supported by competent and substantial evidence upon the whole record," or supported by any evidence at all, unless the statements in the Commission's finding of facts in each case "that the Commission viewed petitioner's property and believe it to be assessed on an equal basis with other comparable property in Jackson County" constitutes any evidence in the cases. The statement indicates that the State Tax Commission acted upon its own knowledge of the facts.

■ In view of the provisions of Sec. 22, Art. V of the Constitution of Missouri and of Chap. 536 RSMo 1949, V.A.M.S., we think a determination as to whether the decisions of any administrative agency is supported by competent and substantial evidence upon the whole record can only be made by reference to such evidence as is incorporated in the record presented for review. Sec. 22, Art. V, Const. of Missouri; Secs. 536.070 and 536.140 RSMo 1949, V.A. M.S.; Sec. 138.470, as amended Laws of Missouri 1957, p. 800. And see State ex rel. Rice v. Public Service Comm., supra, 220 S.W.2d 61, 64(4); Sanderson v. Producers Comm. Ass'n, supra, 229 S.W.2d 563, 565(4).

■ The statement in the Commission's finding in each case that "the Commission viewed petitioner's property and believe it to be assessed on an equal basis with other comparable property in Jackson County" was of no value as evidence and did not tend to support the Commission's findings. Further, the finding did not purport to rebut the testimony of the assessor tending

to show that respondents' properties had been arbitrarily, intentionally and systematically assessed at a greater percentage of true value than other real property in Jackson County.

■ While a view may be taken by the triers of the fact to enable them to understand the evidence, such view cannot be substituted for evidence, nor can it constitute evidence in the case. We think its purpose is well stated in Cowan v. Bunting Glider Co., 159 Pa.Super. 573, 49 A.2d 270, 271, as follows: "Triers of fact, be they judges, jurors, viewers, board or commissions, may always visit and inspect the locus in quo to secure a better understanding of the evidence and to enable them to determine the relative weight of conflicting testimony. But a view cannot replace testimony; the visual observations of the trier cannot be substituted for testimony; and the only legitimate purpose of an inspection is to illustrate the evidence and provide a base for understanding and comprehending testimony upon the record. When the arbiter becomes a witness without testifying, the purpose of the view is prostituted. * * *." And see Ohio Bell Telephone Co. v. Public Utilities Comm. of Ohio, 301 U.S. 292, 300, 305, 57 S.Ct. 724, 81 L.Ed. 1093. And see annotations in 123 A.L.R. 1349. There is nothing in the record to show when the view was had, how extensive it was, who made it or who was present. A private view taken without notice or knowledge of the parties, without an opportunity to test, explain or refute any evidence considered and without any evidence in the record to support the conclusion reached after the private view cannot be considered in determining the issues presented. To hold otherwise would make judicial review meaningless. Ennis v. O'-Hearne, 4 Cir., 223 F.2d 755, 758(3, 4).

It follows from what has been said that there is no competent and substantial evidence in the record to support the decisions of the Commission in the instant cases.

The trial court did not err in so holding, or in setting aside the decisions in question.

On the record presented, the facts in the Van Brunt cases are somewhat different, but in view of the whole record we think the same result must follow and they are included in the above without extending this opinion to discuss the particular differences.

■ The question remaining is whether the circuit court exceeded its jurisdiction by finding and instructing the Commission to find the value of and the assessment of these properties as found and determined by the circuit court.

We have seen that there was no evidence that any specific property in Jackson County had, prior to January 1, 1956, been assessed at 27.2 percent of its market value. The evidence was that the Commission had estimated that the average ratio of assessments (in aggregate values) for Jackson County was 27.2 percent of market value of all real property in the county. Other evidence tended to show that the Commission had determined that, for the purpose of equalization among the several counties of the state, 30% of true market value was the minimum figure for assessment purposes the Commission would accept and, accordingly, that a letter had been sent to the assessor of Jackson County on January 17, 1956. The letter, in part, read as follows: "In line with the State Tax Commission's program for equalizing property assessed valuations between Missouri counties be advised that the data assembled to date respecting the level of real estate assessments within your county indicates that an aggregate increase of 10 percent on town lots and 10 percent on farm lands is required for the year 1956 in order to elevate the assessment level of your county up to the minimum current requirement determined by this commission. * * *." Thereafter, the assessor increased the assessment of all except three of the mentioned properties from the amounts indi-

cated for the 1955 assessments to amounts indicated for the 1956 assessments (see exhibits supra). As stated, respondents' evidence tended to show that respondents' properties were assessed for 1956 at approximately 50% of their current market values while other real estate was assessed at materially lower percentages. Respondents' evidence also tended to show the value of the respective tracts at approximately double the assessed valuations. On the evidence hereinbefore reviewed the trial court ordered the respective properties assessed at 30% of their value as determined by the court.

Under Sec. 138.430, subd. 2 it was the duty of the Commission to investigate all such appeals and to correct any assessments which were shown to be unlawful, unfair, improper, arbitrary or capricious. And see Sec. 138.460 and Sec. 138.470 RSMo, V.A.M.S., the latter section as amended, Laws 1957, p. 800. While the decisions of the Commission were subject to judicial review under the provisions of Chap. 536, RSMo, V.A.M.S., we find no provisions of this chapter by which, on this record, the circuit court was authorized to determine the proper assessment of the described properties for the year 1956, nor was there evidence in the record from which proper assessments could be determined as a matter of law. There was no competent substantial evidence in the record to show that the average ratio of assessed value to the considered value of real property in Jackson County on January 1, 1956 was 27.2 percent. This conclusion upon which the Commission may have acted in seeking to equalize property assessments between counties throughout the state was neither an admitted, proven or conceded fact upon which the court could act. The fact that the Commission had acted on that figure in ordering the 10% increase in the aggregate of assessments in Jackson County did not permit its use as a matter of law by the court in undertaking to fix the amounts for which the several properties should be assessed. The court confused evidence with established fact and substituted its discretion for the discretion legally vested in the State Tax Commission. Section 536.140(5) RSMo, V.A.M.S., expressly provides that "the court shall not substitute its discretion for discretion legally vested in the agency." And see May Department Stores Co. v. State Tax Commission, supra, 308 S.W.2d 748, 764; Ulman v. Evans, supra, 247 S.W. 2d 693, 695(1).

The circuit court exceeded its jurisdiction when it undertook to weigh the evidence in the record and to make a determination as to the value of the respective properties and thereafter undertook to fix the amount for which each tract should be assessed. In so doing the court substituted its discretion for the discretion legally vested in the State Tax Commission.

The orders and judgments of the circuit court on both counts of the several petitions setting aside the several decisions of the State Tax Commission and staying the collection of the disputed portion of the taxes assessed and enjoining the imposition of interest and penalties pending final disposition of the causes are affirmed. That portion of the several judgments fixing the value of the several properties, the amount for which they should be assessed, the amount of taxes due and permanently enjoining the collection of the remaining portion of the taxes assessed is reversed and set aside and the causes are remanded to the circuit court with directions to enter an order in conformity to this opinion and remand the causes to the State Tax Commission for further proceedings not inconsistent with this opinion.

All concur.