ST. LOUIS COUNTY, Missouri, a body
corporate and politic, Appellant,

v.

The STATE TAX COMMISSION of Missouri
et al., and WLB Holding Company,
a corporation, Respondents.

No. 58441.

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1974.

Thomas W. Wehrle, St. Louis County Counselor, James H. White, Associate County Counselor, Clayton, for appellant.

Hearnes, Padberg, Raack, McSweeney & Slater by Edward P. McSweeney, St. Louis, for respondent, WLB Holding Co.

HOUSER, Commissioner.

The question is the true value in money as of January 1, 1972 for state and county taxes of Sierra Vista, an apartment complex in north St. Louis County, and two adjoining tracts of land, all owned by WLB Holding Company. The assessor placed a valuation of $2,939,340 on the improvements and $693,030 on the land, for a total valuation of $3,632,370 as of January 1, 1972, resulting in an assessment (on the basis of one-third of its true value in money) of $1,210,790. Taxpayer appealed to the county board of equalization, which sustained the assessment. Taxpayer filed a petition for review with the state tax commission. Following a hearing the commission lowered the assessment to $759,420. St. Louis County filed a petition for review by the circuit court to annul the commission's decision or in the alternative to reinstate the assessment of $1,210,790. The commission, named as a defendant, filed its return, attaching copies of all proceedings before it, including a transcript of the hearing and its

findings of fact, conclusion of law, and decision. St. Louis County filed a motion to quash the commission's return for failure to include findings of fact, conclusions of law and a concise statement of the findings on which the agency based its order, as required by § 536.090, RSMo 1969, V.A.M.S., and requested remand to the commission with directions to make appropriate findings of fact and conclusions of law. The circuit court overruled the motion to quash and remand and affirmed the decision of the tax commission. St. Louis County appealed to this Court, which has jurisdiction because this appeal involves a construction of the revenue laws. Greene County, Missouri v. Hermel, Inc., 511 S. W.2d 762 (Mo.1974) (No. 58,141, decided July 22, 1974).

The county's first point is that the court erred in not quashing the commission's findings and conclusions and not remanding the proceedings to the commission for redecision, "since the 'findings and conclusions' adopted by the commission violated Section 536.090 for want of a concise statement of findings on which the commission's decision was based."

Section 536.090, RSMo 1969, V.A.M.S., requires that every decision of an agency in a contested case include or be accompanied by findings of fact and conclusions of law, and that "[t]he findings of fact shall be stated separately from the conclusions of law and shall include a concise statement of the findings on which the agency bases its order."

Iron County v. State Tax Commission, 480 S.W.2d 65 (Mo.1972), holds that such findings of fact must constitute a factual resolution of the matters in contest before the commission; must advise the parties and the circuit court of the factual basis upon which the commission reached its conclusion and order; must provide a basis for the circuit court to perform its limited function in reviewing administrative agency decisions; must show how the controlling issues have been decided, and that

a mere recital or statement in chronological order of the events which transpired giving rise to the controversy is not sufficient.

Stephen & Stephen Properties, Inc. v. State Tax Commission, 499 S.W.2d 798 (Mo.1973), holds that where various factors are in evidence bearing on a determination of "the true value in money" of real estate in connection with its assessment for taxes the state tax commission must determine the question of law whether the factors are relevant to a determination of value, and if the factors are found to be relevant as a matter of law the commission must then decide their effect on the value of the property; that the commission's duty is not performed by stating its ultimate decision, but it must make findings of fact and conclusions of law which are an essential part of and the basis for its decision, from which the reviewing court may determine if the agency's decision is supported by competent and substantial evidence.

Taxpayer's case was based solely upon the income capitalization approach to valuation. Taxpayer's evidence consisted of the testimony of Thomas J. O'Toole, a qualified land appraiser, and Exhibit A, a written analysis of matters he considered pertinent to an estimation of fair market value of the apartments and adjacent land as of January 1, 1972. He concluded that the fair market value was $1,181,000. He considered the income approach as "the only indication of value"—the only proper way to approach the valuation. He testified that the construction of all of the apartments was not completed as of January 1, 1972; that some of the buildings were still under construction. He estimated that the property was 70% completed, from a physical standpoint, and 50% completed "income-wise." He did not make his computation on the basis of the maximum income when all units would be completed and rented but only on the basis of the units actually completed on the assessment date. He did not consider vacancies, i. e., no consideration was given to

the value of units completed but not yet rented, or on which rent deposits had not been made, as of that date. His income approach was not done on an annualized basis for the stated reason that it was not a completed project. He obtained from the auditor the actual income during 1971 from the units which on January 1, 1972 were actually completed and rented and computed the value of the whole property on the basis of that income. Some of the buildings yielded 1971 rent for 11 months; some for less. Mr. O'Toole's method of figuring was to take the actual gross income from rents and deposits for rent received in 1971, with no factor for vacancy or credit loss, deduct actual expenses, deduct for return to land (8% of land value), capitalize this figure at 11% (8½% interest; 2½% depreciation), and add the value of the land.

The county's case was based solely upon the reproduction cost method of valuation, plus the cost of the land as reported by the owner. The county's evidence consisted of the testimony of Messrs. Ray Gordon and John McDonald, qualified land appraisers. Mr. Gordon testified that as of January 1, 1972 all twenty-two apartment buildings were completed. The method used to arrive at the appraised value was to take the square foot area of the property and extract a square foot value from the Winsley manual as used in the assessor's office at that time to compute the appraised valuation. Dividing that number by three produces an assessment of land and improvements of $3,632,370. Both he and Mr. McDonald took exception to the method used by Mr. O'Toole in arriving at his valuation. They considered that in fixing true value as of January 1, 1972 it was improper to ignore buildings 100% completed but not yet rented and buildings say 90% completed that would be completed and rented within a short time. Mr. Gordon testified that by simply using the income actually produced in 1971 "you are giving some of the building away." According to an exhibit prepared by the

taxpayer one or more apartment buildings were completed as of the first days of February, March, April, May, June, July and October, 1971; as of January 1, 1972 twenty-one of the twenty-two buildings projected were completed, and those twenty-one buildings contained 221 of the 224 units contemplated in the completed project.

Following the hearing the commission filed the following:

### "STATEMENT

"This is an appeal by WLB Holding Company, a corporation organized and existing under the laws of the State of Missouri, to the State Tax Commission of Missouri from the action of the County of St. Louis Board of Equalization affirming the assessment made by the Assessor of the County of St. Louis on real property owned by the corporation, and known as Sierra Vista Subdivision. After the action of the Board of Equalization, an appeal was filed with the State Tax Commission and is based on the contention that the assessment as affirmed by the Board of Equalization is for more than the property is worth, and should be decreased as of January 1, 1972.

"The hearing before the State Tax Commission was held September 21, 1972, in the St. Louis County Administration Building, Clayton, Missouri 63105. Appearing on behalf of Appellant was Edward P. McSweeney, of Padberg, Raack, McSweeney & Slater, 1015 Locust Street, St. Louis, Missouri 63101. Appearing for Respondent, St. Louis County, was Mr. James White, Associate County Counselor, St. Louis County Administration Building, Clayton, Missouri 63105. Members of the Commission present were J. E. Riney, Chairman, Carl E. Davis, Member, and Don G. Williams, Member.

### "FINDINGS OF FACT

"WLB Holding Company is a corporation which owns Sierra Vista Subdivision in

St. Louis County, Missouri, an apartment complex which is subject to real property taxation under the laws of the State of Missouri.

"The subject tract, consisting of approximately 35.52 acres of vacant land, and approximately 14.69 acres improved with 22 two-story buildings containing 244 apartment units for a total of approximately 50.31 acres, was found by the St. Louis County Assessor to have an assessed valuation of $1,210,790 as of January 1, 1972.

"Appellant offered testimony per its Exhibit A, to the effect that, based upon the income approach the fair market value of the property on January 1, 1972, was $1,181,000, or an assessed valuation of $393,666.

"The County's testimony, based upon the cost approach, confirmed the Assessor's figures.

"The County's testimony was that apartment buildings such as these are considered complete for tax purposes once they are under roof.

"Sierra Vista, an apartment complex, was created as an income property.

"With due deference to the testimony of both parties, the Commission finds the assessed value of the property to be $759,420, as of January 1, 1972.

## "CONCLUSION OF LAW

"Appellant properly and timely filed its appeal to this Commission from the action of the St. Louis County Board of Equalization affirming the assessment imposed by the Assessor of St. Louis County. This Commission has jurisdiction. St. Louis County's objection to Appellant's statement of the grounds for appeal is without merit.

## "OPINION

"We hold that the proper value for assessment purposes of Appellant's property, Sierra Vista Subdivision, being the subject of this appeal number 340, is $759,420 as of January 1, 1972."

In determining a tax assessment the commission is not bound by any single formula, rule or method, but is free to consider all pertinent facts and estimates and give them such weight as reasonably they may be deemed entitled to. Chicago, B. & Q. R. Co. v. State Tax Commission, 436 S.W.2d 650 (Mo.1968), cert. den. 393 U.S. 1092, 89 S.Ct. 878, 21 L.Ed.2d 783. The relative weight to be accorded any relevant factor in a particular case is for the assessing authorities and not for the courts, and their discretion is not to be interfered with by the courts except in cases of abuse. The state tax commission, however, is bound by the strictures of § 536.090 and must state the basis of its determination of the "true value in money" referred to in § 137.115, RSMo 1969, V.A.M.S. It does not have the privilege enjoyed by common law· juries deliberating on damages in a negligence suit to reach up in thin air and pick a figure somewhere within the limits of the evidence, without any burden of giving a rational explanation. The commission stated that it gave "due deference" to the testimony of both parties. It is impossible to determine from the commission's reference to due deference whether the commission gave weight and credence to the income method of valuation as interpreted by Mr. O'Toole, or the reproduction cost method explained by the county's witnesses, or both, or neither. "Due deference" is so vague, indefinite and inconclusive as to be meaningless in this frame of reference. We are not informed and from this record cannot ascertain how the commission arrived at its valuation figure of $759,420. It is possible that the commission took the figures advanced by the contending parties and roughly split the difference, arbitrarily settling upon the figure $2,278,260 which, divided by three, equals $759,420.

The parties differed sharply with respect to the proper method of valuation. The parties differed completely with re-

spect to the interpretation placed by Mr. O'Toole on the factors which properly go into an income approach to valuation. This called for declarations of law as to the propriety of and the proper elements to consider in adopting either method relied upon, and a definite indication as to the weight accorded each, i. e. how the final decision was weighed as between the various methods, elements and factors. If the commission gave consideration to the income method there should have been declarations of law on whether the earning capacity of the property or the actual earnings should be considered; whether it is proper to omit the factors of vacancy and credit losses; whether it is proper in evaluating a property substantially completed to capitalize actual income from the preceding year based on partial occupancy and partial rent yield, or proper to make a projection on an estimated annual yield; whether the tax is to be levied upon the net earnings as such or whether net earnings should merely be treated as a guide in ascertaining the capital value; the proper method of capitalizing, including the proper percentages to be used in the computation and the proper allowance for depreciation, etc. The commission was also obliged to make *findings of fact* with respect to all relevant factors, and find the value of the land. Merely reciting that taxpayer "offered testimony per its Exhibit A \* \* \*" does not constitute a finding that the facts related in Exhibit A are true and accepted by the commission. If the commission gave consideration to the reproduction cost method it should have made declarations of law with respect to the proper method of ascertaining reproduction cost, and findings of fact with respect to the elements and factors entering into this method of calculation. It was not enough to find that "The County's testimony, based upon the cost approach, confirmed the Assessor's figures," etc.

■ We conclude that the commission's findings of fact and conclusion of law are not responsive to the issues raised by the parties and are insufficient under the Iron County and Stephen cases. They fail to resolve contested issues of fact; fail to find pertinent uncontroverted facts; fail to demonstrate the basis of the commission's ultimate decision; fail to state what factors the commission considered relevant to a determination of value and fail to indicate the effect of the chosen factors on the value of the property. The case must be remanded to the commission for the entry of proper and sufficient findings of fact and conclusions of law.

The County's second point is that the taxpayer's appeal to the tax commission should have been dismissed for failure of taxpayer to state in its petition for review the grounds on which the assessment was alleged to be illegal or erroneous or on which relief was sought.

Article X, § 14, Mo.Const., V.A.M.S., provides that the general assembly shall establish a commission to hear appeals from local boards and correct any assessment "which is shown to be unlawful, unfair, arbitrary or capricious." Section 138.430 (2), RSMo 1969, V.A.M.S., provides for such appeals "under rules prescribed by the state tax commission. Said commission shall investigate all such appeals and shall correct any assessment which is shown to be unlawful, unfair, improper, arbitrary or capricious." Rule III of the state tax commission requires such appeals to be prepared on forms prescribed by the commission, and provides that no appeal will be accepted unless on the form prescribed by the commission and that the petition "shall specify \* \* \* a brief statement of the grounds upon which the assessment of such property is claimed to be illegal or erroneous, \* \* \* and a statement of the relief to which appellant may feel entitled." Taxpayer used the form prescribed by the commission, which recites that the property has not been assessed in compliance with the laws of Missouri "in that the present assessment of $————— is made for more than the property is worth and same should be decreased to its actual

value which your petitioner believes to be $_____." Neither blank was filled in by taxpayer, although the information called for in the first blank was given at another place on the form, and in the attached copy of the taxpayer's appeal to the county board of equalization. The petition to the board stated this reason for the appeal: "Land and improvements are of much less value than as assessed."

▓▓▓ Although the grounds stated are meager and conclusory we adhere to the general rule that technical rules of pleading are not applied to applications for relief filed with the state tax commission, and if a petition fairly presents the claimed error or illegality, it will be deemed sufficient for the purpose. The commission did not consider that its rule had been violated and apparently both the commission and the circuit court understood the gist of taxpayer's complaint. This Court, while not recommending the loose practice employed in this case, has had no difficulty reviewing the case on this account, or by taxpayer's failure to fill in the blank asking for the actual value taxpayer believed its property worth. It is in the interest of the public that taxpayers' appeals be determined on their merits. Pursuant to this policy we hold the defects in the petition for review to be irregularities merely and not jurisdictional.

The County's third point is that the court erred in not remanding the case to the commission with instructions to affirm the assessment determined by the county board of equalization, because "there is no substantial and competent evidence in the record as a whole upon which the Commission may lawfully rely to reduce the assessment." In support of this reason the County analyzes the methodology of taxpayer's expert witness O'Toole, and attacks his approach as "legal and arithmetical nonsense" because based upon capitalization of rent received during the year 1971 in which the project was under construction, and in which many of the buildings did not generate an income throughout a

full year; that this method yields a conclusion that has no relationship to the true value in money of the property as a whole; that taxpayer did not sustain its burden to demonstrate that the protested assessment is unlawful, unfair, improper, arbitrary, capricious or intentionally discriminatory.

In Greene County, Missouri v. Hermel, Inc., 511 S.W.2d 762 (Mo.1974), this Court held that an order of the circuit court directing the state tax commission to reinstate the assessor's valuation violated the principles of numerous cited cases and exceeded the court's authority. In that case, as in this case, the evidence on valuations was highly controverted. The Court commented that the argument that taxpayer did not sustain its burden was really an argument on the weight of the evidence, and that the appellate court may not determine the weight of the evidence; that while the court might properly order reinstatement of the assessor's valuation in a case where there was no issue as to valuation there was such an issue in that case and the Court could not say that the assessor's valuation was correct as a matter of law. "A court has jurisdiction to enter an order modifying the agency's order fixing the amount for which property should be assessed only if the record reveals established facts, i. e., facts standing in the record as 'admitted, proved or conceded,' upon the basis of which the amount may be declared as a matter of law. Koplar v. State Tax Commission, [321 S.W.2d 686, 1. c. 696, 697 (Mo.)]." Drey v. State Tax Commission, 345 S.W.2d 228, 236 (Mo.) [5]. In the case here for decision there are disputed issues of fact and law which must be resolved by the commission before we may make any pronouncements as a matter of law on the correctness and propriety of the assessor's valuation as approved by the county board of equalization. "A court cannot substitute its discretion for the discretion legally vested in the agency, § 536.140, subd. 5, or make a determination of the value of the property and fix the amount of the tax assessment upon

record evidence from which different conclusions might be drawn in the exercise of administrative discretion." Drey v. State Tax Commission, supra, idem.

On remand the parties may introduce additional evidence. If it be determined that the apartment complex was completed or substantially completed on January 1, 1972 and the income approach to valuation is to be taken into consideration the parties and commission may be interested in exploring the question what income could have been expected to be received in 1972 under a reasonably economical and prudent management of the property. 72 Am.Jur.2d State and Local Taxation, § 755, and cases cited fn. 24. The commission is authorized to take additional testimony on this as well as all other phases of the case and the records of rents actually received and expenses actually incurred during the year 1972 may be considered as bearing on this question. This will afford the inquiry the advantage of hindsight, an advantage not enjoyed by the assessor on January 1, 1972, at which time only the partial and limited experience of 1971 was available, or by the parties at the commission hearing in September, 1972, at which time the property had been oper-erated only 8 months in 1972.

The order and judgment of the circuit court is reversed and set aside and the cause is remanded to that court with directions to enter an order in conformity with this opinion, and to remand the cause to the State Tax Commission for reconsideration in the light of this opinion and judgment.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the judges concur.